**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE: ALETA RIVERA
ATCHISON-JORGAN,

        **Plaintiff/Declarant,**        **CIVIL ACTION NO. 12-50879**

    vs.        **CHIEF JUDGE GERALD E. ROSEN**

        **MAGISTRATE JUDGE MONA K. MAJZOUB**

**GENERAL RETIREMENT SYSTEM**
**OF THE CITY OF DETROIT, WALTER**
**STAMPOR, CYNTHIA A. THOMAS,**
**THOMAS SHEEHAN,** and **RONALD**
**ZAJAC,**

        **Respondents.**
_____/

**REPORT AND RECOMMENDATION**

From June 6, 2012, through February 11, 2013, Declarant Aleta Rivera Atchison-Jorgan filed a myriad of documents with the Court. (*See* docket nos. 1-16.) These filings include two affidavits, six notices of "Default/Dishonor," and eight "Certificate[s] of Authenticity," all of which apparently arise out of Declarant's ongoing battle with the IRS over unpaid taxes. (*See id; see also* docket no. 18.) Declarant contends that these documents were not filed with the intent to bring any legal action; they were merely filed as part of her "Public Miscellaneous File." (*See* docket no. 24 at 4.)

A very loose reading of these filings implies that Plaintiff seeks to recover hundreds of millions of dollars from Respondents (and other individuals), but the filings assert no claims. Thus, Respondent General Retirement System of the City of Detroit (DGRS) and the individual Respondents' filed a limited appearance for purposes of bringing their Motion to Dismiss and Strike

1

Atchison-Jorgan's Notice of International Commercial Claim, and for Certain Equitable Relief. (Docket no. 18.) Declarant filed a Response to Respondents' Motion. (Docket no. 24.) Respondents also filed a Motion for Sanctions. (Docket no. 19.) The Motions have been referred to the undersigned for consideration. (Docket no. 20.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.      Recommendation**

For the reasons that follow, the undersigned recommends granting in part and denying in part Respondents' Motion (docket no. 18) and denying Respondents' Motion for Sanctions (docket no. 19). The Court should

(1) dismiss Declarant's claims with prejudice (to the extent that she has made any claims);

(2) strike Declarant's filings from the record;

(3) deny as moot Respondents' motion for an order finding that they have no further duty to appear in this matter;

(4) deny Respondents' motion for an order finding that they have no duty to appear in any future matter related to the Notices of Levy;

(5) deny Respondents' motion for declaratory relief due to a lack of standing;

(6) deny Responents' motions for injunctive relief; and

(7) deny Respondents' motion for costs and fees.

This matter should be dismissed in its entirety, and Declarant should be advised that (1) her filings appear to be frivolous, vexatious, and harassing; (2) should she file similar documents in the future, she may be subject to sanctions, including but not limited to, dismissal of her actions and imposition

of a prefiling injunction prohibiting her from filing future actions without leave of the court, and (3) any future affidavits, certificates of authenticity or other pleadings filed by her in this Court will be deemed to be the commencement of a civil action requiring the payment of a filing fee.

## II.     Report

### A.     Facts and Procedural History

On May 8, 2012, Respondent DGRS received a Notice of Levy on Wages, Salary and Other Income indicating that the IRS was levying Declarant's retirement account in the amount of $168,347.44. (Docket no. 18-2.) On August 10, 2012, DGRS received a second Notice of Levy on Declarant's account in the amount of $164,514.60. (Docket no. 18-3.) Respondents assert that DGRS began sending payments to the IRS in June 2012 and that by May 2013, they had made payments to the IRS in the amount of $28,121.40. (Docket no. 18 at 16.)

In June 2012, Declarant began filing documents with the Court. (*See* docket no. 1.) Declarant's first submission, entitled "Certificate of Service" includes an Affidavit indicating that Plaintiff sent a "Direct Challenge of Personal Authority" to the IRS agent who submitted the Notice of Levy to DGRS. (*See id.*) Plaintiff then submitted various Notices of Default/Dishonor related to electronic funds transfers and Certificates of Authenticity related to the individual Respondents (and other individuals). (*See* docket nos. 4-15.) Plaintiff never served Respondents with any of thse documents and never filed a Complaint or a motion of any kind.

In December 2012, Respondents began receiving documents from Declarant. These documents were sent via registered mail and were (purportedly) notarized. (*See* docke tno. 18 at 17.) Like the documents that Plaintiff filed with the Court, these documents sought hundreds of millions of dollars in damages from Respondents but contained no coherent legal claims. (*See, e.g.*, Docket

3

no. 18-4 (entitled Notice of International Commercial Claim Administrative Remedy and subtitled Notice of Acceptance of Offer to Contract; Notice of Waiver of Tort Claim; Self-Executing Contract in the Nature of a Conditional Acceptance/Commercial Redraft; And of International Commercial Claim Administrative Remedy).) Respondents note that they received these documents at their homes and that Declarant seeks "somewhere in the range of $168,000,000.00 [from Respondents] for violations of tort and contract actions in interstate commerce, when Respondent DGRS has simply complied with the Notices of Levy and the other Respondents work for or serve the DGRS." (Docket no. 18 at 20.)

Respondents allege that they sought counsel in an effort to stop Declarant from sending these documents and in fear that Declarant would attempt to file a lien against their personal property. (*See* docket no. 18 at 35 (noting that some of the Respondents received a "Notice of Intent to Lien" from Declarant).) Respondents' counsel then states that in researching Respondents' claims, she came across the instant case. And instead of filing a claim against Declarant, she filed an appearance in this matter for the limited purpose of filing Respondents' instant Motions. (Docket no. 17.) Through their Motions, Respondents ask the Court to take the following actions:

  a. dismiss Declarant's claims against Respondents, to the extent that such claims exist;

  b. strike all of Declarant's filings in this matter;

  c. "order that Respondents have no further duty to respond and/or appear relating to Declarant's claims filed at this time or in the future with regard to any matters related to the Notices of Levy;"

  d. enter a declaratory judgment finding that the documents filed by Declarant are "fictitious, fraudulent and unenforceable in a court of law, and are void and of no legal effect as they relate to Respondents and/or their agents/representatives;"

      e.      order that the declaratory judgment set forth above may be filed with various state and county agencies so that Respondents can discharge any claims or liens of Declarant;

      f.      enter a declaratory judgment finding that Respondents are immune from suit regarding the Notices of Levy;"

      g.      enjoin Declarant and her agents from "recording, filing and/or asserting any claims or liens against Respondents or any of their assigns relative to the Notices of Levy;

      h.      enjoin Declarant from "making/drafting/signing/presenting/ serving/disseminating and/or directing other to do so, any further mailings to and/or filings against the Respondents and/or their current/former representatives without further leave of the court;"

      i.      enjoin Declarant's agents, including her notaries public and witnesses, from taking similar actions; and

      j.      order Declarant to pay Respondents' costs, including reasonable fees and expense, incurred in "protecting their interests against this frivolous and wholly unfounded matter."

(Docket no. 18 at 39-40; *see also* docket no. 19.)

    **B.**    **Analysis**

        **1.**    **Dismissal of Declarant's Claims and Striking of Filings**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction by attacking the claim on its face, in which case all factual allegations of the Plaintiff must be considered as true, or by attacking the factual basis for jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). If the factual basis for jurisdiction is challenged, the court must weigh the evidence, and the plaintiff bears the burden of proving jurisdiction. *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

Respondents argue that Declarant's claims against them should be dismissed due to "(1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, (4) insufficient process, (5) insufficient service of process, and (6) failure to state a claim on which relief can be granted." (Docket no. 18 at 21.) The undersigned agrees with Respondents with regard to each of these arguments: (1) Declarant's pleadings (to the extent that they can be called such) contain no allegations that would support subject matter jurisdiction; (2) Declarant does not appear to have completed service of any kind on Respondents; (3) Declarant's claims (to the extent she has any) appear to be against the IRS, not Respondents; and (4) Declarant's submissions contain no factual allegations.

More importantly, however, Declarant noted in her Response to Respondents' Motion that "[t]his Case should be dismissed with prejudice" because this case "is merely a number referencing a 'Non Pending Action' and is not to be construed as a 'Active Current Litigation' as is required by FRCP." (Docket no. 24 at 2, 4.) Declarant acknowledges that she has not "entered a 'Summons and Complaint Form with proof of Service upon any specifically named Defendants,'" and she has not paid a filing fee. (*Id.* at 2.) Instead, she argues that Respondents have somehow "trespassed" on her "Non Pending Case" and her "Public Miscellaneous File." (*Id.* at 4.) Thus, she asks the Court to

6

"Order a Criminal Investigation into the moral Turpitute, Barratry, Champerty, Maintenance and other noted criminal acts listed [in her Response] and prosecute the same." (*Id.* at 5.)

Declarant neither intended to file a claim against Respondents nor has she done so. Therefore, to the extent that Declarants' filings could be construed as claims against Respondents, such claims should be dismissed. Moreover, because Declarant has apparently been using the Court's docket as a "Public Miscellaneous File," her filings should be stricken from the record. The Court's docket is not a public file server.

### 2. Respondents' Duty to Appear

Respondents ask the Court to enter an order finding that they have "no duty to respond and/or appear relating to Declarant's claims filed at this time or in the future with regard to any matters related to the Notices of Levy." As Respondents implicitly acknowledge by the "limited appearance" that they filed in this matter, they had no duty to appear with regard to Declarant's filings. Thus, their request that the Court enter an order finding that they have no duty to respond and/or appear relating to Declarant's present claims is moot. To the extent that Respondents seek an order with regard to "future . . . matters related to the Notices of Levy," the Court should deny Respondents' Motion. While it is unlikely that Declarant could set forth a plausible claim with regard to the Notices of Levy, the Court should not speculate with regard to what claims may be filed by Declarant or any other person or entity. Such speculation could relieve Respondents from appearing or responding in a matter where such an appearance or response is entirely appropriate.

### 3. Declaratory Judgments

The Declaratory Judgment Act states in pertinent part as follows:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

7

> legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Ultimately, a court must consider five factors when deciding whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted).

Nevertheless, even if a party can satisfy the requirements noted above, "Article III's 'case and controversy' requirement is not satisfied, and a court therefore has no jurisdiction, when the claimant lacks standing, that is, 'a sufficiently concrete and redressable interest in the dispute.'" *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir.2009) (citation omitted). Thus, before a court can decide whether to exercise jurisdiction over the action, a plaintiff must establish that:

> (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm.

*Id.* at 962 (quoting *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir.2006)).

Respondents argue that they are entitled to their requested declaratory relief because "Declarant has provided no legal basis for this Court to grant any relief in her favor," "it would be

8

a waste of judicial resources to give voice to such frivolous claims," it would "aide in the settlement of the controversy [between Declarant and Respondents] so that no future filings . . . would be given any power or recognition by this Court," it would "permit Respondents to readily discharge any improper liens that Declarant and/or her agents have filed or intend to file against Respondents' property," and "[t]here is no 'procedural fencing' involved." (Docket no. 18 at 37.) While the undersigned agrees with Respondents' assertions, they have set forth no "injury in fact" beyond their conjectural assertion that Declarant may attempt to file liens against their personal property. While the undersigned understands Respondents' concerns, their concerns do not give them Article III standing. Moreover, with regard to their immunity from suit, while Respondents may be entitled to such immunity, Declarant has not filed such a suit, and it does not appear that she intends to do so. Therefore, the Court should deny Respondents' Motion with regard to their request for declaratory relief.

### 4. Injunctive Relief

The All Writs Act "provides that Article III courts generally 'may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 330 (6th Cir.2009) (quoting 28 U.S.C. § 1651(a)). But the All Writs Act "should only be used 'sparingly and only in the most critical and exigent circumstances.'" *In re Life Investors Ins. Co. of Am.*, 589 F.3d at 330 (quoting *Wisc. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004)). In relevant respect to this matter, the Act gives the district court authority to limit access to the courts by vexatious and repetitive litigants through a pre-filing injunction. To evaluate such a request, courts generally consider five factors:

> (1) the history of vexatious or duplicative lawsuits; (2) the plaintiff's motive in pursuing the litigation; (3) whether the plaintiff was represented by counsel; (4) whether the plaintiff caused needless expense or posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate.

*Adams v. Springleaf*, No. 12-10308, 2013 WL 1774724, *1 (E.D. Mich. Apr. 25, 2013) (Goldsmith, J.) (citing *Orlando Residence Ltd. v. GP Credit Co., LLC*, 609 F.Supp.2d 813, 816-17 (E.D. Wis. 2009)).  As Respondents note, the key question the Court must answer is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass the other parties."  (Docket no. 18 at 31 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2nd Cir. 1986)).)

Here, the undersigned finds that while Declarant has started out on the wrong foot, there is no evidence to suggest that she intended (or intends) to abuse the judicial process to harass Respondents.  To the contrary, of the five factors noted above, only the unnecessary burden placed on the Court and its personnel weighs in favor of a pre-filing injunction.[1]  Declarant has no history of litigation whatsoever[2] – let alone vexatious litigation; that is, with the exception of appearing as a Defendant in two matters related to her failure to pay taxes, this is the only matter in which Declarant has appeared.  And while she may ultimately intend to pursue litigation against Respondents, her motive in filing the instant case was not to pursue any litigation.

---

[1]While Declarant indicates that her filings are merely part of her "Public Miscellaneous File" and that she did not intend to file a claim of any kind, she filed 16 pro se documents in this case alone, many of which were over 100 pages in length.  The undersigned notes that the burden placed on this Court in dealing with these filings could justify the imposition of a pre-filing injunction.  *Accord*, *Evaul v. Hammonds*, No. 06-096, 2007 WL 3101241, *10 (W.D.N.C. Oct. 18, 2007).

[2]The undersigned's review of Declarant's past litigation (or lack thereof) is limited to a search of this Court's docketing system.  Respondents have provided no evidence to suggest that Declarant has filed claims in any other courts.

Most importantly, the undersigned finds that alternative sanctions are available that the Court should consider before imposing a pre-filing injunction. Like the court in *Evaul v. Hammonds*, No. 06-096, 2007 WL 3101241, *11-12 (W.D.N.C. Oct. 18, 2007), the Court should advise Declarant that her filings appear to be frivolous, vexatious, and harassing. The Could should inform Declarant that "[s]hould [she] file similar [documents] in the future, she may be subject to sanctions, including but not limited to, dismissal of these actions and a prefiling injunction prohibiting her from filing such future actions without leave of the court." *See id.* Moreover, while Declarant was not required to pay a filing fee in the instant action, the Court should advise her that "any future [affidavits, certificates of authenticity] or other pleadings filed by her in this Court will be deemed to be the commencement of a civil action requiring the payment of [a filing fee]." *See id.* at *12.

### 5. Respondents' Motion for Rule 11 Sanctions

Respondents argue that the Court should impose sanctions on Declarant for a violation of Fed. R. Civ. P. 11(b) in the form of "costs and legal fees associated with bringing this Motion and Respondents' Motion to Dismiss."[3] (Docket no 19 at 18-19, 24.) Rule 11(b) provides that

> [b]y presenting to the court a pleading, written motion, or other paper . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[3]Respondents also ask the Court to impose sanctions in the form of injunctive relief. (Docket no. 19 at 24.) This request, however, is identical to Respondents' request in their Motion to Dismiss.

11

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1), (2). The test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances. *Tropf v. Fidelity Nat'l. Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002). The imposition of sanctions for Rule 11 violations is discretionary, not mandatory. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778 (6th Cir. 1996). Moreover, such sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by other similarly situated." Fed. R. Civ. P. 11(c)(4).

Respondents argue that Declarant's "unsubstantiated claims are filed and disseminated as a campaign of harassment against Respondents in their private lives" and that "Respondents have been forced to hire counsel to respond to these frivolous claims that are not warranted by existing law and with no legal effect." (Docket no. 19 at 21.) Respondents contend that hiring legal counsel was necessary to "stop Declarant and her agents/represntatives from filing 'common law liens' against Respondents' personal asserts, which is the next step 'Tax Protesters' use to harass persons like Respondents." (*Id.* at 21-22.) What Respondents do not consider, however, is that the Court's review under Rule 11 is limited to Declarant's filings. That is, Rule 11 applies when a party "present[s] to the court a pleading, written motion, or other paper," not to actions that a party may take outside of court. *See* Fed. R. Civ. P. 11(b). Additionally, when considering the factors set forth in Rule 11(b), the undersigned acknowledges that even if Declarant intended to harass Respondents my mailing certain documents to their homes, she did not intend to harass them by filing these

12

documents with the Court, and she did not and she did not intent to make any "claims, defenses or other legal contentions" through her filings. To the contrary, while inappropriate, Declarant appears to have intended to use the Court's docket as her "Public Miscellaneous File." Moreover, instead of pulling Respondents into vexatious litigation, she takes issue with Respondents appearing in this matter in any way. Thus, the undersigned finds that Rule 11 sanctions are not warranted.[4]

### D. Conclusion

The recommendations herein are not intended to imply that Respondents are not entitled to relief of any kind or that Declarant's actions are proper. To the contrary, the undersigned acknowledges that Declarant's conduct appears inappropriate, frivolous, and harassing. But for the reasons stated herein, Respondents' limited appearance in this matter and their instant Motions are not the appropriate mode of redress. Thus, for the reasons stated herein, the undersigned recommends granting in part and denying in part Respondents' Motion to Dismiss and Strike Atchison-Jorgan's Notice of International Commercial Claim, and for Certain Equitable Relief (docket no. 18) and denying Respondents' Motion for Sanctions (docket no. 19). The Court should take the action set forth in Section I.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28

---

[4]Moreover, even if the Court finds that Rule 11 sanctions would be appropriate under the circumstances, Fed. R. Civ. P. 11(c)(2) requires that a Motion for Sanctions be served on the allegedly offending party under Fed. R. Civ. P. 5 and that the party must be given 21 days to cure the alleged violation before the Motion is filed with the Court. Respondents do not state or imply that they served Declarant with a copy of their instant Motion or that they gave her time to withdraw or appropriately correct her filings. Thus, Declarant's Motion should be denied on procedural grounds.

U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 6, 2014                     s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Aleta Rivera Atchison-Jorgan and Counsel of Record on this date.

Dated: March 6, 2014                     s/ Lisa C. Bartlett
                                         Case Manager